JAMES LINN, Respondent, v. MASSILLON BRIDGE COMPANY,
Appellant.

### St. Louis Court of Appeals, January 10, 1899.

1. **Damages: CONTRIBUTORY NEGLIGENCE: PRACTICE, TRIAL.** The trial
court can not, at the conclusion of all the evidence, take the case
from the jury because of the contributory negligence of the plain-
tiff unless the probative effect of the entire evidence excludes every
other reasonable inference.

2. ———: ———: INSTRUCTION CRITICISED. In the case at bar the
following instruction was given: "And if you further find from
the evidence that said Secrest was present directing the taking
down of said derrick, and that he did not exercise ordinary care
*in directing said derrick to be so taken down without fastening or
securing said leg to prevent it from falling whilst being so taken
down;* and if the jury find from the evidence that plaintiff was ex-
ercising ordinary care at the time of his injuries and that his in-
juries were directly caused by said want of care of said Secrest,
then the plaintiff is entitled to recover." Held, that by the use of
the above italicised words the instruction under review not only ex-
cluded from the jury all consideration of the defense to the charge
of negligent direction of the work by the foreman of defendant, but
it *assumed* such negligence to be the fact and was erroneous and
misleading and was not aided by another instruction which did not
assume such negligence on the part of the defendant.

3. **Negligence: PIVOTAL QUESTION.** In the case at bar, whether or
not defendant's foreman in ordering plaintiff to remove or lower
the derrick *first* ordered him and his colaborers to lash its legs,
was a pivotal question under the charge of negligence contained in
the petition and its assumption in the instruction was reversible
error.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

REVERSED AND REMANDED; Judge BIGGS dissents.

A. R. TAYLOR for respondent.

We submit that the propositions of law governing this case are familiar. Citations of authorities to support them would be superfluous. Upon all controverted facts the jury has passed, and the verdict and judgment are right. We ask an affirmance of the judgment.

GEORGE W. TAUSSIG and JOHN E. BISHOP for appellant.

The trial judge had in the course of the trial repeatedly referred to the defense made by the defendant as to the manner of lashing the leg at the top, and it undoubted that the jury could have only considered the written instruction number 1, given for the plaintiff, to mean that the ultimate decision of the court was, that the only place to lash that leg was at the bottom and the entire defense had been swept away by the judge. Linn had testified positively that if he had lashed the leg at the top chord the accident would not have occurred, and that it was only a little matter of time to tie and untie the lashing there. Smith had so testified; Hogan and Cass, the plaintiff's experts, had admitted its feasibility; Ray, the engineer, and defendant's agent, had claimed that the proper place for Linn and Smith to lash the leg was wherever they were, wherever it was most convenient to them; Ellis had declared it was feasible; Siegrist had so declared, but the court in its instructions throws aside all those witnesses, and tells the jury to find for the plaintiff if the leg was not lashed at the bottom. This instruction was a fatal blow to any possibility of the defendant succeeding before this jury. No other instruction given could possibly be an antidote or cure the fault which it occasioned. Carroll v. Railway, 60 Mo. App. 465; Fitzgerald v. Hayward, 50 Mo. 516; Hohlstadt v. Diggs, 50 Mo. App. 240.   *   *   *
The instructions asked by the defendant which the supreme court of Missouri, in Davitt v. Railroad, 50 Mo. 302 (p. 304),

·said should have been given were of a kindred purpose as this instruction. "If the other party, in order to prevent misconception, ask to have the law applied to the facts, as he claims them to be, by an additional appropriate instruction, it should be given. The jury might not know what was ·contributory negligence and therefore the defendant had a right to have the matter explained, and to require that they be told that certain facts, which the evidence tended to establish, constituted such negligence. Davitt v. Railroad, 50 Mo. 302, 305. To require Siegrist to be watching these ·expert men lower this derrick, or to render the defendant liable for this foreman not lashing the leg at the top or at the bottom, "would·be an abrogation of the well recognized and necessary rule, that the servant, when engaged in his master's service, assumes all the risks ordinarily incident to the discharge of his duties he undertakes to perform, and would make the master, an insurer of the safety of its servants. It would be most unreasonable to require the master to keep a special watch over every employee, and warn him of every common danger to which he might be subjected in the performance of his ordinary duties; and the law does not require it." Ib. 112 Mo. 231. We ask that the judgment be reversed.

BOND, J.—The petition alleges that plaintiff while in the employ of defendant and aiding in taking down a traveling derrick used in the construction of a bridge across Bay Creek, Illinois, was knocked from his perch on the top of a span of the bridge by a falling leg of the derrick, causing severe injuries; that the accident was caused by the negligence of defendant's foreman who was directing plaintiff's work at the time. The answer denies negligence; avers that the accident was a risk attached to the service, and that plaintiff was injured by his own carelessness, or that of his fellow

servants.  The reply took issue.  Plaintiff had judgment for $2,000.  Defendant appealed, and assigns for error the refusal of the court to sustain its demurrer to the evidence.

The facts in this case are, that defendant is a bridge builder, and at the time of the accident was engaged in constructing a highway bridge, which was one hundred and eighteen feet long, twenty-two feet high, and fourteen feet wide, and which, except the floor, was an iron structure.  To hoist material for its construction a derrick having two legs each thirty-eight feet long bestriding the bridge was used. At the foot of each leg was a cleat.  There was a lateral run-way about two feet on each side of the bridge over which the derrick traveled.  About eight feet from their top ends the legs of the derrick were connected together by two planks bolted to each leg, called "caps."  The plaintiff was an experienced bridge builder, but employed as one of the workers.  On the occasion in question he was told by the superintendent to "go up and help lower the derrick." For this purpose he ascended to the top of the bridge and assisted in removing the bolt which secured the caps to one leg of the derrick.  Because this leg of the derrick was not lashed before the removal of the bolt either to the top of the bridge or the bottom, it slid and fell to the ground, and in so doing either directly or indirectly struck the plaintiff, so that he fell to the ground and was injured.  Touching the negligence of the defendant, the only dispute in the testimony is as to the following proposition:  Did the foreman Secrest order plaintiff and his colaborers to take the derrick down by removing the caps attaching its legs without first ordering them to lash the legs so as to prevent the accident?  Plaintiff adduced some evidence tending to show the affirmative of this proposition in the testimony of himself and others that they heard no order to lash the legs given by the superintendent, from the physical fact that they were not lashed, and from the admission of the superintendent

that he knew the danger of taking down the derrick before fastening its legs, and that to prevent it he directed the workmen to make such fastenings, and provided them with suitable ropes for that purpose. It is true that to justify the deduction in favor of the affirmative of the proposition the jury would have to discard the statement of the superintendent as to the order given by him, and which was corroborated by many witnesses. But we have no power to coerce the credence however clear and satisfactory the oral evidence against their finding might seem to us. As plaintiff's evidence on this point entitled the jury to infer negligence on the part of defendant upon the assumption that its superintendent omitted proper precautions for the safety of the men working under his direction, the demurrer to the evidence could not be sustained on the theory that there were no facts or circumstances in the record affording an inference of defendant's negligence. It is necessary therefore to inquire whether the demurrer should have been sustained on the ground of contributory negligence on the part of plaintiff. The rule on this subject is, that the court can not, at the conclusion of all the evidence, take the case from the jury because of the contributory negligence of the plaintiff, unless the probative effect of the entire evidence excludes every other reasonable inference. For if the evidence tending to prove contributory negligence is controverted, or, if it is susceptible though uncontroverted, of contrary legitimate inferences, the jury are entitled to pass on the conflicting evidence or the conflicting inferences. As tending to show contributory negligence by the plaintiff there was his admission that the accident could have been avoided by the simple matter of tying the leg of the derrick to the top of the bridge, and that he might have done this with ropes which were at hand. If nothing else appeared in the testimony we should hold that his failure to lash the leg to the top of the bridge, or to require it to be lashed at

the bottom, if he observed that had not been done, was inconsistent with the duty of ordinary care imposed even upon a servant in obeying the orders of his master. But the proof does not stop at this point. It was further shown by plaintiff and other witnesses testifying as experts in bridge building, that it would have been improper to lash the leg at the top of the bridge, and that the proper method would be to fasten it at the bottom. Assuming that the jury took this view, as their verdict indicates, they might have also believed that plaintiff did not look to the condition of the leg at the bottom of the bridge, as he testified, because he supposed the superintendent in the discharge of his duty, to observe reasonable care to avoid danger to his employees, had caused such fastening to be made. The record was susceptible of these inferences, and although it also offered a seemingly strong inference of negligence by plaintiff in failing to glance at the unfastened leg at the bottom of the bridge—plainly within the range of his view—yet it was for the jury to determine which of the two inferences ought to be drawn from all the facts and circumstances, and the court did not err in overruling plaintiff's demurrer to the evidence.

The next error relates to the instructions. The first instruction given for plaintiff after setting forth the issues to be found by the jury in order to determine whether the injury was caused by the want of a proper fastening to the leg of the derrick, uses the following language: "And if you further find from the evidence that said Secrest was present directing the taking down of said derrick, and that he did not exercise ordinary care in *directing said derrick to be so taken down without fastening or securing said leg to prevent it from falling whilst being so taken down;* and if the jury further find from the evidence that plaintiff was exercising ordinary care at the time of his injuries and that his injuries were directly caused by said want of care of said Secrest, then the plaintiff is entitled to recover." If

the vice-principal directed the plaintiff to remove or lower the derrick before ordering him to lash its legs to prevent it from falling whilst being so taken down, a clear inference of negligence would arise under the facts in this record showing that defendant's foreman was aware of the danger to be incurred in so doing. If on the contrary defendant's foreman warned the plaintiff of the danger of unloosening the bolt which held the leg of the derrick *before* lashing the leg, and directed him first to lash the leg of the derrick, and then remove the appliances for its support, and plaintiff refused to heed such warning or obey such direction, and was thereby injured, no inference of negligence on defendant's part could be drawn. As we have seen defendant gave much positive testimony supporting the latter view of the happening of the accident. By the use of the above italicized words the instruction under review not only excluded from the jury all consideration of the defense to the charge of negligent direction of the work by the foreman of defendant, but it *assumed* such negligence to be the fact. This assumption is expressly contained in the following words used to denote the way in which the foreman ordered the taking down of the derrick, i. e., *"to be so taken down without fastening or securing said leg."* These qualifying terms follow and apply to the previous reference in the instruction to the act of the foreman to wit, "in directing said derrick." The purpose of the qualifying clause was to define the manner of the direction which the instruction assumed had been given by the foreman. The words employed for this purpose are of ordinary import. Their natural meaning is clear and plain, hence there can be no reason for rejecting their literal significance. They simply told the jury that defendant's vice-principal ordered the derrick to be taken down in the particular manner described, to wit, "without fastening or securing said leg," thus expressing on the face of the instruction a patent assumption of the

fact (as to the order given by the superintendent) contrary to all the evidence adduced by defendant relating to the nature of the order given. According to this instruction the jury, in view of the actual fact that the legs of the derrick were not fastened nor secured in any way, had only to consider whether the want of such fastenings tended to show the absence of ordinary care, in which event they were told to find defendant guilty of negligence. As there is no doubt it would have been a negligent act on the part of defendant's foreman to order the man to abstain from fastening the legs of the derrick while taking it down under the circumstances in this record, the language of the instruction was equivalent to a peremptory instruction to find defendant guilty of negligence. The instruction in question was one purporting to cover the whole case and directed a finding. As it was positively erroneous and misleading, it was not aided by a subsequent instruction given of the court's motion which did not, as the one under review, assume the fact essential to show negligence on the part of defendant. The rule reading together all the instructions given in a case, warrants the supplementing of an imperfect by a perfect instruction; or, in other words, the curing of *omissions* in one instruction by a complete and correct statement in another; but it does not go to the extent of holding that an instruction given for respondent which is radically wrong— that it perverts the law or prejudges the facts—can be cured by another on behalf of the same party which is free from the vice of the former. Such repugnant directions afford no guide to the jury, nor can it be presumed that they followed one rather than the other. Goetz v. Railway, 50 Mo. 472; Carder v. Primm, 60 Mo. App. 423; Kinner v. Tschirpe, 54 Mo. App. loc. cit. 578. Inconsistency in the instructions for respondent, or between his and those given of the court's motion, are not governed by the rule inhibiting an appellant from complaining of the contradiction between

an instruction on *his* behalf and one given for respondent.
In the latter case the appellant can not have a reversal for
mere contradictory instructions, but must be able to show
that the instruction for the opposing party is erroneous in
itself and not merely contradictory of one given for him. The
reason of the rule is that his own instructon however vicious
was a self-invited error and hence not reviewable at his
instance because lacking the essential quality—exception
thereto on the trial—necessary to the reviewability of any
matter occurring during the progress of a trial.    See Chris-
tian v. Ins. Co., 143 Mo. 460, citing 122 Mo. loc. cit. 596-
599, reviewing previous cases and overruling 108 Mo. loc.
cit. 450.    The justice of the rule requiring consistency in
the instructions on the side of respondent to prevent a
reversal on appeal is strikingly illustrated in the case before
us.    Here the first instruction for plaintiff assumes a fact
in dispute, and another instruction given of the court's
motion submits an issue as to the same fact.    Can it be said
that the jury while considering the issue as to the fact sub-
mitted by one instruction would not be influenced by the
decision of the same fact in the other instruction, or that the
latter did not bias the judgment of the jury upon the former?
Such a supposition is opposed to common knowledge and ex-
perience of the habits of the jurors in relying on the court for
proper guidance in the discharge of their duties and their
eager efforts to catch its views.    In the present case the
line of demarcation between plaintiff's right to recover and
contributory negligence barring such right could only have
been drawn, as has been seen, by the indulgence of a favor-
able inference on the part of the jury.    Defendant was
therefore justly entitled to have the fact relied upon as the
basis for such inference submitted to the jury free from any
intimation by instruction that such fact was contrary to the
view presented by its evidence.    Whether or not defend-
ant's foreman in ordering plaintiff to remove or lower the

derrick *first* ordered him and his colaborers to lash its legs, was a pivotal question under the charge of negligence contained in the petition. Its assumption contrary to the evidence for defendant in the instruction under review was therefore clearly reversible error. The judgment therefore is reversed and the cause remanded. Judge Bland concurs; Judge Biggs dissents.

## DISSENTING OPINION OF JUDGE BIGGS.

The fundamental error in the majority opinion is that it assumes that if the foreman ordered the plaintiff to lash the legs of the derrick before removing the cap, no negligence can be imputed to the defendant. This in my judgment is an erroneous conception of the law. The foreman was present superintending the work and it was his business and duty to see to it that the usual and proper means were adopted in taking down the derrick so as not unnecessarily to endanger the lives of the workmen. His duty was not performed by ordering the workmen or some one of them to adopt the necessary precautions, but it was his business to see that it was done. Failing in this he must be held guilty of negligence in the discharge of his official duties, which makes his negligence imputable to his master. When the case is looked at from this standpoint it becomes obvious that the plaintiff's instruction omits *no essential precedent condition of recovery,* and as it was supported in all of its requirements by substantial evidence it was properly given. It required the jury to find that at the time the plaintiff received his injuries he was exercising due care. The majority opinion shows that there was evidence in support of this. It required the jury to find that the foreman in superintending the removal of the derrick exercised ordinary care. This implies that he was negligent in that regard. There was evidence that the usual and safe way of removing

the derrick was to lash the legs to the bottom of the bridge, and that a failure to do so endangered the lives of the workmen. The instruction assumes that the legs were not so lashed, but that fact was conceded by the defendant at the trial. The contention of the defendant that its foreman ordered the plaintiff to fasten the legs of the derrick *before* removing the cap, presents a matter of defense. The evidence of the defendant on the subject merely tended to establish contributory negligence on the part of the plaintiff which is an affimative defense. Suppose some other workman had been hurt, would it have been any answer to his complaint that the foreman ordered the plaintiff here or some one else to lash the legs of the derrick and that he failed to do so?

Now, I admit that it would have been the better practice if plaintiff's instruction had noted the affirmative defense, but its omission was not error, provided it was properly brought to the attention of the jury in other instructions. This was done in a very clear and forcible way in the second instruction given by the court on its own motion. The rule of practice as thus stated was the final conclusion of the supreme court in a *per curiam* opinion in the case of Schroeder v. Michel, 98 Mo. 43. We had the same question before us in Voegeli v. The Pickel Marble Co., 49 Mo. App. 643, where all of the cases were reviewed, and the doctrine of the Schroeder case was discussed and followed, in which we held that the giving of an instruction, which assumed to state facts necessary to a verdict for plaintiff, but which did not refer to such affirmative defenses as the case might present, was not reversible error, provided the attention of the jury was called to the omitted matter in other instructions. The record here presents just such a case. It may be remarked that defendant's counsel, who are competent and industrious lawyers, regarded the instruction as I do, for its

condemnation by my associates is for reasons which are not alluded to in the briefs.

I have examined the remaining assignments and as I find no reversible error in the record, I think the judgment ought to be affirmed.